NOWELL AMOROSO KLEIN BIERMAN, P.A.
155 Polifly Road
Hackensack, NJ 07601
(201) 343-5001
Rick A. Steinberg (RS-7396)

Attorneys for Plaintiff, Maersk Line

FILED
CLERK

2015 APR 15  PM 1: 32

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

COGAN, J.

|  |  |
|---|---|
| MAERSK LINE, | Civil Action No. |
| Plaintiff, | **CV 15 - 2154** |
| vs. |  |
| TRANSCO SHIPPING CORPORATION, | **COMPLAINT** |
| Defendant. | **IN ADMIRALTY** |

Plaintiff, Maersk Line ("Plaintiff" or "Maersk"), by its attorneys, Nowell Amoroso Klein Bierman, P.A., by way of Complaint against Defendant, Transco Shipping Corporation ("Defendant" or "Transco"), avers as follows:

**JURISDICTION**

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1333. This matter arises under the laws of the United States, in particular, The Shipping Act of 1984 (as amended), 46 U.S.C. § 40101 et seq. (hereinafter "the Shipping Act"), and involves contract(s) within the jurisdiction of this Court or claims pendent or ancillary to the same. This is an admiralty and maritime claim.

**FIRST COUNT**
**(For Money due Under Tariff & Service Contracts)**

2.   Maersk is a common carrier by water, *inter alia*, in the interstate and foreign commerce of the United States as defined in the Shipping Act and was such a common carrier for the benefit of Defendant.

3.   Defendant is and was at all times herein mentioned, a natural person, firm, association, organization, partnership, corporation, business, trust, or public entity, with its principal place of business or residence in this district and is and was a legal entity capable of being sued.

4.   Venue is proper in this judicial district because it is where the claim arose and/or because Defendant resides or does business in the district.

5.   Plaintiff has filed a schedule of its rates and charges and service contracts for the carriage of cargo, wharfage and dockage detention and demurrage with the Federal Maritime Commission or has otherwise maintained said rates, charges, tariffs or service contracts pursuant to the Shipping Act.  Pursuant to the Shipping Act, Plaintiff is prohibited from transporting cargo for a lesser rate than that specified in its tariffs or service contracts.  The Shipping Act also prohibits Defendant from obtaining transportation or attempting to obtain transportation of cargo at lesser rates.

6.   Plaintiff transported cargo for the benefit of Defendant during 2012-2013 in the foreign commerce of the United States in the course and scope of Defendant's NVOCC operations.  Such transportation and services provided are evidenced by Plaintiff's service contracts, bills of lading and/or freight bills, invoices, credit agreements and freight guarantees, the terms of which are incorporated herein through this reference.  Plaintiff has fully performed its tariff obligations.  A summary of the relevant bills of lading and invoices are attached hereto as Exhibit "A" and made a part hereof.

7.   Plaintiff has demanded that Defendant pay the full amount due of $24,252.00.

8. Defendant has knowingly and willfully failed and refused to pay Plaintiff the full amount due.

9. Consequently, Defendant is liable to Plaintiff in the amount of $24,252.00, plus reasonable attorney fees and interest thereon.

## SECOND COUNT
### (Breach of Written Contract)

10. Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 9 of the Complaint as if fully set forth herein.

11. Said transportation was performed pursuant to written contract(s) of carriage and/or service contracts between Plaintiff and Defendant, as evidenced by said bills of lading and/or invoices listed in Exhibit "A."

12. Plaintiff has fully performed its obligations under said contracts except those obligations, if any, which Plaintiff was excused from performing.

13. Plaintiff has demanded that Defendant pay the amount due under said contracts and the Defendant has refused to pay thereon.

14. Consequently, Defendant is liable to plaintiff in the amount of $24,252.00, plus reasonable attorney fees and interest thereon.

## THIRD COUNT
### (Unjust Enrichment)

15.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 14 of the Complaint as if fully set forth herein.

16.     Defendant has been unjustly enriched by failing to pay the ocean freight and/or detention charges in an amount not less than $24,252.00.

## FOURTH COUNT
### (Quantum Meruit)

17.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 16 of the Complaint as if fully set forth herein.

18.     The fair value of the ocean cargo carriage and/or detention services provided by Plaintiff to Defendant is not less than $24,252.00.

## FIFTH COUNT
### (Account Stated)

19.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.     Plaintiff issued the subject bills of lading on behalf of Defendant as consignee.

21.     Based on the account stated, Plaintiff has been damaged in an amount not less than $24,252.00.

## SIXTH COUNT
### (Attorney Fees)

22.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     The bill of lading provides at Section 16.6 that "If the Merchant fails to pay the Freight when due he shall be liable also for payment of service fee, interest due on any outstanding and/or overdue sum, reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier."

24.     Based on the terms of the bill of lading, Defendant is liable to Plaintiff for reasonable attorney fees and expenses incurred in collecting any sums due to Maersk.

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount not less than $24,252.00, plus interest, court costs, attorney fees and such other relief as the court deems just and equitable.

4

Dated: Hackensack, New Jersey
       April 13, 2015

                    NOWELL AMOROSO KLEIN BIERMAN, P.A.
                    Attorneys for Plaintiff, Maersk Line

       By:    /s/ Rick A. Steinberg
              Rick A. Steinberg (RS-7396)
              155 Polifly Road
              Hackensack, New Jersey 07601
              (201) 343-5001

5

**EXHIBIT "A"**



## MAERSK LINE

**NON-NEGOTIABLE WAYBILL**

SCAC: MAEU
B/L No. 589997693

**Shipper**
SEAMASTER GLOBAL FORWARDING (CHINA)
LIMITED. AS AGENT FOR TOLL GOLBAL
FORWARDING (HONG KONG) LTD.
RM.205,NO.175 EAST YAN AN ROAD,
SHANGHAI,CHINA
TEL:021-23305700 FAX:021-23305711

Booking No.
589997693

Export references
C00260339

Svc Contract
605388

**Consignee**
TRANSCO SHIPPING CORP
One Cross Island Plaza, Suite 120
Rosedale, NY 11422
Tel#:718-528-5000
Fax#:866-240-0568

**Notify Party**
TRANSCO SHIPPING CORP
One Cross Island Plaza, Suite 120
Rosedale, NY 11422
Tel#:718-528-5000
Fax#:866-240-0568

This contract is subject to the terms and conditions including the law & jurisdiction clause and limitation of liability & declared value clauses, of the current Maersk Bill of Lading, available from the carrier, its agents and at www.maerskline.com, which are applicable with logical amendments (mutatis mutandis).     To the extent necessary to enable the Consignee to sue and to be sued under this contract, the Shipper on entering into this contract does so on his own behalf and as agent for and on behalf of the Consignee and warrants that he has the authority to do so. The shipper shall be entitled to change the Consignee at any time before delivery of the goods provided he gives the Carrier reasonable notice in writing.
Delivery will be made to the Consignee or his authorised agent on production of reasonable proof of identity (and, in the case of consignment, reasonable proof of authority) without production of this waybill. The Carrier shall be under no liability whatsoever for misdelivery unless caused by the Carrier's negligence.

Onward inland routing (not part of Carriage as defined in clause 1. For account and risk of Merchant)

| Vessel | Voyage | Place of Receipt. Applicable only when document used as Multimodal Waybill |
|---|---|---|
| MAERSK MERLION | 1211 | |

| Port of Loading | Port of Discharge | Place of Delivery. Applicable only when document used as Multimodal Waybill |
|---|---|---|
| SHANGHAI, CHINA | Miami,fl,United States | |

### PARTICULARS FURNISHED BY SHIPPER

| Kind of Packages; Description of goods; Marks and Numbers; Container No./Seal No. | Weight | Measurement |
|---|---|---|
| 1 Container Said to Contain 390 Cartons<br><br>COOLERS<br>S/C:605388<br>SCAC:SMMB<br>HBL:SSHA0462471<br><br>N/M<br><br>TTNU9725526  ML-CN5562025  40 DRY 9'6  390 Cartons  5262.000 KGS  64.3000 CBM<br>SHIPPER'S LOAD, STOW, WEIGHT AND COUNT<br>FREIGHT COLLECT<br>CY/CY | 5262.000 KGS | 64.3000 CBM |

Above particulars as declared by Shipper, but without responsibility of or representation by Carrier.

| Freight & Charges | Rate | Unit | Currency | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| Carrier's Receipt. Total number of containers or packages received by Carrier | Place of Issue of Waybill |
|---|---|
| 1 container | Shanghai |

| Shipped on Board Date ( Local Time ) | Date Issue of Waybill |
|---|---|
| 2012-08-01 | 2012-08-02 |

Declared Value Charges (see clause 7.3 of the Maersk Line Bill of Lading) for Declared Value of US$

Shipped, as far as ascertained by reasonable means of checking, in apparent good order and condition unless otherwise stated herein the total number or quantity of Containers or other packages or units indicated in the box opposite entitled  "Carrier's Receipt"

Signed for the Carrier A.P. Moller - Maersk trading as Maersk Line

As Agent(s) for the Carrier

ARCHIVE COPY

# MULTIMODAL TRANSPORT BILL OF LADING

## 1. Definitions

"Carriage" means the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Goods.

"Carrier" means A.P. Møller - Mærsk A/S trading as Mærsk Line of 50 Esplanaden, DK-1098, Copenhagen K, Denmark.

"Container" includes any container (including an open top container), flat rack, platform, trailer, transportable tank, pallet or any other similar article used to consolidate the Goods and any connected equipment.

"Freight" indicates all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.

"Goods" means the whole or any part of the cargo and any packaging accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February 1968, but only if such amendments are compulsorily applicable to the bill of lading. It is expressly provided that nothing in this bill of lading shall be construed so contractually applying the said Rules as amended by said Protocol.

"Holder" means any Person for the time being in possession of this bill of lading to or in whom rights of suit and/or liability under this bill of lading have been transferred or vested.

"Mærsk Line" is the trade name of the Carrier.

"Merchant" includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this bill of lading and anyone acting on behalf of such Person.

"Multimodal Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the reverse hereof in the relevant spaces.

"Ocean Transport" means the same as Port-to-Port Shipment.

"Person" includes an individual, corporation, or other legal entity.

"Port-to-Port Shipment" arises when the Carriage is not Multimodal.

"Subcontractor" includes owners, charterers and operators of vessels (other than the Carrier), stevedores, terminal and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the Carriage or whose services or equipment have been used by the Carriage and any direct or indirect Subcontractors, servants and agents thereof whether or direct contractual privity or not.

"Terms and Conditions" means all terms, rights, defences, provisions, conditions, exceptions, limitations and liberties hereof.

"US COGSA" means the US Carriage of Goods by Sea Act 1936.

"Vessel" means any ocean going vessel used in the performance of this bill of Lading which may be a feeder vessel or an ocean vessel.

## 2. Carrier's Tariff

The terms and conditions of the Carrier's applicable Tariff are incorporated herein. Attention is drawn to the terms therein relating to free storage time and container and vehicle demurrage or detention. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this bill of lading and the applicable Tariff, this bill of lading shall prevail.

## 3. Warranty

The Merchant warrants that in agreeing to the Terms and Conditions hereof he is, or has the authority to contract on behalf of, the Person owning or entitled to the possession of this bill of lading.

## 4. Subcontracting

4.1 The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the Carriage.

4.2 The Merchant undertakes that no claim or allegation whatsoever shall be made against any servant, agent or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned by any of them any liability whatsoever in connection with the Goods or the Carriage of the Goods whether or not arising out of negligence on the part of such Person. The Subcontractor, agent or servant shall also be entitled to enforce the foregoing covenant against the Merchant.

4.3 Without prejudice to the generality of the foregoing provisions of this clause, every exemption, limitation, condition and liberty contained herein (other than Art 3 rule 8 of the Hague Rules) and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder including the right to enforce any jurisdiction provision contained herein (clause 26) shall also be available to and extend to protect every such Subcontractor, agent or servant, who shall be entitled to enter thereto as being party to or as beneficiary of such contracts as if it were party thereto and who said Terms and Conditions were expressly for the benefit of such Person, whether such agent or servant.

## 5. Carrier's Responsibility – Port-to-Port Shipment

5.1 Where the Carriage is Port-to-Port, then the liability of the Carrier for loss of or damage to the Goods occurring between the time of loading at the Port of Loading and the time of discharge at the Port of Discharge shall be determined in accordance with any national law making the Hague Rules compulsorily applicable to this bill of lading, or in the case of shipments to or from the United States subject to the clause in accordance with the Hague-Visby Articles 1-8.

5.2 The Carrier shall have no liability whatsoever for any loss or damage to the Goods while in its actual or constructive possession before loading or after discharge, howsoever caused. Notwithstanding the above, to the extent any applicable compulsory law imposes limits the Carrier's liability, the Carrier shall have the benefit of every right, defence, limitation and liberty in the Hague Rules as applicable through such national legislation compulsorily applicable, notwithstanding that the loss or damage did not occur at sea.

5.3 Where US COGSA applies then the provisions stated in the said Act shall govern during Carriage to or from a container yard or container freight station at the Port of Loading before loading on the vessel or/the Port of Discharge before delivery to the Merchant and the Carrier is requested by the Merchant to procure Carriage by an inland carrier in the United States of America and the inland carrier in the desparitive agrees to do so, such carriage shall be procured by the Carrier as agent only by the Merchant and Carrier shall have no liability for such carriage or acts or omissions of such inland carrier.

5.4 In the event that the Merchant requests the Carrier to deliver the Goods:

(a) at a port other than the Port of Discharge; or

(b) at a place of delivery instead of the Port of Discharge, and the Carrier in its absolute discretion agrees to such request, such further Carriage will be undertaken on the basis of the terms and conditions of this bill of lading as the Port of Discharge was at such place or other port, and the Carrier in its absolute discretion agrees to the ultimate destination agreed with the Merchant had been entered on the reverse side of this bill of lading as the Port of Discharge or Place of Delivery.

## 6. Carrier's Responsibility – Multimodal Transport

Where the Carriage is Multimodal Transport, the Carrier undertakes to perform and/or in its own name to procure performance of the Carriage from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or Place of Delivery, whichever is applicable. The Carrier shall have no liability whatsoever for loss or damage to the Goods occurring before or after the scope of the Carriage. The Carrier shall be liable for loss or damage occurring during the Carriage only to the extent provided herein.

6.1 Where the stage of Carriage where loss or damage occurred is not known.

(a) The Merchant and the Carrier agree that the loss or damage shall be deemed to have occurred at sea, and

(b) The Carrier shall be entitled to the benefit of the provisions of the applicable law as set out in clauses 7.1 and 7.2.

(ii) In all other cases, compensation shall not exceed 2 SDR per kilo of the gross weight of the Goods lost or damaged.

6.2 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and higher compensation than that provided for in this bill of lading may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery hereof and stated in the box opposite entitled "Declared Value" has been noted on the reverse side of the bill of lading, higher compensation than that referred to above is claimable, then liability shall be determined in accordance with clause 7.3 below.

## 7. Compensation and Limitation of Liability

7.1 Subject always to the Carrier's right to limit liability as provided for herein, if the Carrier is liable for compensation in respect of loss of or damage to the Goods, such compensation shall be calculated by reference to the value of the Goods according to their commercial value at the place and time they are delivered to the Merchant or should have been delivered. The value of the Goods shall be determined with reference to the commercial invoice, customs declaration, any prevailing market price at the place and time they are delivered to the Merchant, or should have been delivered. If there is no such invoice or market price, the reasonable value of Goods at time delivered.

7.2 Save as provided in clause 7.3:

(a) If the Hague Rules are applied by virtue of clause 5.1 or clause 6.2(b) the Carrier's liability shall in no event exceed the applicable limitation amount of GBP 100 per package or unit.

(b) For shipments to or from the U.S., the liability of the Carrier shall not exceed USD 500 per package or customary freight unit, or any lesser limitation as stated per clause 6.2(a)(i).

(c) In all other cases, compensation shall not exceed 2 SDR per kilo of the gross weight of the Goods lost or damaged.

7.3 The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and higher compensation than that provided for in this bill of lading may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery hereof and stated in the box opposite entitled "Declared Value" has been noted on the reverse side of the bill of lading. In that case the amount of the declared value shall be substituted for the limits set down in this bill of lading, and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

7.4 Nothing in this bill of lading shall operate to limit or deprive the Carrier of any statutory protection, defence or exclusion or limitation of liability authorised by any applicable laws, statutes or regulations of any country. The Carrier shall have the benefit of the said laws, statutes or regulations as if it were the owner of any carrying ship or vessel.

## 8. General

8.1 The Carrier does not undertake that the Goods or any documents relating thereto shall be carried or available at any point or place at any stage during the carriage of the Goods or at all and the Carrier shall not be under any obligation to give notice of non-arrival. Subject only to clause 8.2 below, the Carrier shall in any event be discharged from any liability whatsoever in respect of non-delivery, mis-delivery, delay, detention on board, land or elsewhere of the Goods howsoever caused.

8.2 The Carrier shall be entitled to carry the Goods on or under deck and if carried on deck the Carrier shall not be required to note, mark or stamp on the bill of lading any statement of such on deck carriage. Such Goods (whether carried on deck or under deck) shall participate in General Average and shall be subject to the Hague Rules as defined in clause 1 where the Carrier is liable for loss or damage caused solely by the on deck carriage.

8.3 The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods, and contain no contraband, drugs, or other illegal substances or stowaways, and that the Goods will not cause loss, damage or expense to the Carrier, or to any other cargo during the Carriage.

8.4 If any particulars of any Credit and/or Import License and/or Sale Contract and/or Invoice or Order number and/or reference to which the same relates is such, any shown or face of this bill of lading, such particulars shall be deemed to be a declaration to the Carrier, but the Carrier shall not be under any responsibility of whatsoever nature for the correctness thereof, and the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases the Carrier's liability under this bill of lading.

8.5 The Carrier shall not be liable to any extent for any loss or damage or expense arising in any way from pilferage, perishability, inherent vice, insufficiency of packing or the strength of any Container or units not supplied by or on behalf of the Carrier, notwithstanding that such Container has been supplied with the knowledge that it is to be used for Carriage of Goods.

## 9. Notice of Loss, Time Bar

9.1 All of the Persons coming within the definition of Merchant in clause 1, including any principal of such Person, shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this bill of lading.

9.2 The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, duties, fines, attorneys' fees, penalty, expense or loss arising or resulting from any breach of any of the warranties in clause 11.1 or from any other cause whatsoever in connection with the Goods for which the Carrier is not responsible.

9.3 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including Freight for any additional Carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

9.4 The Merchant shall be liable for loss of or damage to Containers and other equipment if such loss or damage occurs while in the charge of the Merchant or his agents or of a person to whom the Merchant has delivered the Container, to the extent that this has been brought about by the negligence of such Persons.

## 10. Description of Goods and Merchant's Responsibility

10.1 This bill of lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carrier's Receipt" on the reverse hereof.

10.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

10.3 The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods, and contain no contraband, drugs, or other illegal substances or stowaways, and that the Goods will not cause loss, damage or expense to the Carrier, or to any other cargo during the Carriage.

10.4 If any particulars of any Credit and/or Import License and/or Sale Contract and/or Invoice or Order number and/or reference to which the same relates is such, any shown on the face of this bill of lading, such particulars shall be deemed to be a declaration to the Carrier, but the Carrier shall not be under any responsibility of whatsoever nature for the correctness thereof, and the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases the Carrier's liability under this bill of lading.

10.5 The Carrier shall not be liable to any extent for any loss or damage or expense arising in any way from pilferage, perishability, inherent vice, insufficiency of packing or the strength of any Container or units not supplied by or on behalf of the Carrier, notwithstanding that such Container has been supplied with the knowledge that it is to be used for Carriage of Goods.

## 11. Merchant's Responsibility

11.1 All of the Persons coming within the definition of Merchant in clause 1, including any principal of such Person, shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this bill of lading.

11.2 The Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, duties, fines, attorneys' fees, penalty, expense or loss arising or resulting from any breach of any of the warranties in clause 11.1 or from any other cause whatsoever in connection with the Goods for which the Carrier is not responsible.

11.3 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including Freight for any additional Carriage undertaken) incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

11.4 The Merchant shall be liable for loss of or damage to Containers and other equipment if such loss or damage occurs while in the charge of the Merchant or his agents or of a Person to whom the Merchant has delivered the Container, to the extent that this has been brought about by the negligence of such Persons.

## 12. Description of Goods

12.1 The Merchant should note that refrigerated Containers are not designed (a) to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo being presented at a higher temperature than that required for the Carriage; nor

(b) to monitor and control humidity levels, albeit a setting facility exists, in that humidity is influenced by many external factors and the Carrier does not guarantee the maintenance of any intended level of humidity inside any Container.

12.2 The Merchant undertakes not to tender for Carriage any Goods which require temperature control without having previously given written notice of their nature and the required temperature setting of the thermostat before receipt of the Goods by the Carrier and, in the case of a refrigerated Container packed by or on behalf of the Merchant, that the Merchant has inspected the Container and it is in sound condition (including cleanliness), and has properly stowed and set the thermostat before delivery to the Carrier. If the above requirements are not complied with the Carrier shall not be liable for any loss of or damage to the Goods arising from such stuffing.

12.3 The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, derangement, breakdown, stoppage of the refrigerating, heating or insulating or ventilating or other such special equipment of the Container, provided that the Carrier shall before and at the beginning of the Carriage exercise due diligence to maintain the Container in an efficient state.

## 13. Inspection of Goods

The Carrier shall be entitled, but under no obligation, to open and/or scan any package or Container at any time and to inspect the contents. If it appears at any time that the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as agent only of the Merchant) take any measures and/or incur any reasonable additional expense to carry or to continue the Carriage thereof, and/or store the Goods ashore or afloat, under cover or in the open, at any place, whichever the Carrier in his absolute discretion considers most appropriate, which store, abandonment or storage shall be deemed to constitute due delivery under this bill of lading. The Merchant shall indemnify the Carrier against any additional expense so incurred. The Carrier in exercising the liberties contained in this clause shall be under any particular measures and shall not be liable for any loss, delay or damage howsoever arising from any action or lack of action under this clause.

## 14. Description of Goods

14.1 This bill of lading shall be prima facie evidence of the receipt by the Carrier in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box entitled "Carrier's Receipt" on the reverse hereof.

14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

14.3 The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on the reverse hereof have been checked by the Shipper on receipt of this bill of lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods, and contain no contraband, drugs, or other illegal substances or stowaways, and that the Goods will not cause loss, damage or expense to the Carrier, or to any other cargo during the Carriage.

14.4 If any particulars of any Letter of Credit and/or Import License and/or Sale Contract and/or Invoice or Order number and/or reference to which the same relates is such, any shown on the face of this bill of lading, such particulars shall be deemed to be a declaration to the Carrier, but the Carrier shall not be under any responsibility of whatsoever nature for the correctness thereof, and the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases the Carrier's liability under this bill of lading.

## 15. Dangerous Goods

15.1 No Goods which are or may become dangerous, inflammable or damaging, or which are or may become liable to damage any property whatsoever, shall be tendered to the Carrier for Carriage without the written consent of the Carrier and without the Container and packages being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws or regulations. If any such Goods are delivered to the Carrier without such written consent and marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, noxious, hazardous, flammable or damaging nature, the same may at any time be unloaded, destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight.

15.2 The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws or regulations which may be applicable during the Carriage.

15.3 The Merchant shall indemnify the Carrier against all claims, liabilities, loss, damage, delay, costs, fines and/or expenses arising in consequence of the Carriage of such Goods, and/or arising from any breach of the warranties in clause 21.2 including any steps taken by the Carrier pursuant to clause 21.1 whether or not the Merchant was aware of the nature of such Goods.

## 16. Valuable Goods

The Carrier shall not in any circumstances be liable for loss of or damage to or in connection with platinum, gold, silver, jewellery, precious stones, precious metals, specie, documents, negotiable instruments, securities, writings, bullion, title deeds, chattels paper, printings, pictures, embroideries, works of art, curios, heirlooms, collections of every nature or any other valuable Goods whatsoever including Goods having particular value only for the Merchant, unless the true nature and value of the Goods has been declared in writing by the Merchant before receipt of the Goods by the Carrier and inserted on the face of this bill of lading and the ad valorem Freight has been prepaid thereon.

## 17. Notification and Delivery

17.1 Any mention in this bill of lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

17.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff. If the Merchant fails to do so, the Carrier shall be entitled without notice to unpack the Goods if packed in Containers and/or to store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods shall cease, and the cost of such storage (if paid or payable by the Carrier or any agent or Subcontractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

17.3 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility whatsoever attaching to it, sell, abandon or otherwise dispose of such Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this bill of lading.

17.4 Refrigerated, perishable and other Goods which require special attention owing to their nature may be sold or disposed of without any notice to the Merchant and without any responsibility whatsoever attaching to the Carrier.

## 18. Optional Stowage, Deck Cargo and Livestock

18.1 The Goods may be packed by the Carrier in or on Containers consolidated with other goods in or on Containers.

18.2 Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant unless marked on the face of this bill of lading as being carried on deck. Such Goods, whether carried on deck or under deck, shall participate in General Average and shall be subject to the Hague Rules as defined in clause 1, unless the Goods are stated herein to be carried on deck and are so carried.

18.3 Goods, whether packed in Containers or not, which are stated herein to be carried on deck and which are so carried, and all live animals, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during the Carriage whether caused by unseaworthiness or negligence or any other cause whatsoever.

## 19. Methods and Routes of Carriage

19.1 The Carrier may at any time and without notice to the Merchant:

(a) use any means of transport or storage whatsoever;

(b) transfer the Goods from one conveyance to another including transshipping or carrying the same on a vessel other than the vessel named on the reverse hereof or by any other means of transport whatsoever and, even though transshipment or forwarding of the Goods may not have been contemplated or provided for herein;

(c) unpack and remove the Goods which have been packed into a Container and forward them as uncontainerised Goods;

(d) sail without pilots, proceed via any route in its discretion (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to or stay at any place or port whatsoever (including the Port of Loading and Discharge) once or more often and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;

(e) load or unload the Goods at any place or port (whether or not such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Goods at any such place or port;

(f) comply with any orders or recommendations given by any government or authority or any Person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions;

(g) permit the Vessel to proceed with or without pilots, to tow or be towed, or to be dry-docked, with or without cargo on board;

(h) carry the Goods to or retain them at the Port of Loading or Place of Receipt or return them thereto and store them ashore or afloat under cover or in the open at any time and place and thereupon the Carrier's responsibility shall wholly cease.

## 20. Matters Affecting Performance

If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind, and howsoever arising (even though the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage) the Carrier whether or not the Carriage has commenced may without notice to the Merchant and at the sole discretion of the Carrier either:

(a) Carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable by an alternative route to that indicated in this bill of lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this Clause 20(a) then notwithstanding the provisions of clause 26 hereof, the Carrier shall be entitled to charge such additional Freight as the Carrier may determine; or

(b) Suspend the Carriage of the Goods and store them ashore or afloat upon the Terms and Conditions of this bill of lading and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension. If the Carrier elects to invoke the terms of this clause 20(b) then notwithstanding the provisions of clause 26 hereof, the Carrier shall be entitled to charge such additional Freight as the Carrier may determine; or

(c) Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall entirely cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for Carriage and the Merchant shall pay any additional costs of the Carriage to and delivery and storage at such place or port. If the Carrier elects to use the terms of this clause 20(c) then notwithstanding the provisions of clause 26 hereof, the Carrier shall be entitled to charge such additional Freight as the Carrier may determine.

20.3 The liberties set out in clause 20.2 above may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of the Goods, including but not limited to loading or unloading other goods, bunkering or undergoing repairs and/or dry-docking, making any necessary adjustments to equipment, loading or (or) laying up of the Vessel, assisting vessels in all situations, towing and being towed, and saving or attempting to save life or property. Any delay or deviation arising from the exercise of such liberties shall not be deemed to be a breach of this contract.

## 21. Dangerous Goods

21.1 No Goods which are or may become dangerous, inflammable or damaging, or which are or may become liable to damage any property whatsoever, shall be tendered to the Carrier for Carriage without the written consent of the Carrier and without the Container and packages being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws or regulations.

21.2 The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws or regulations which may be applicable during the Carriage.

## 22. Freight and Charges

22.1 Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.

22.2 The Merchant's attention is drawn to the stipulations concerning currency in which the Freight and charges are to be paid, rate of exchange, devaluation and other contingencies relative to Freight and charges in the relevant Tariff conditions.

22.3 All sums payable to the Carrier are due immediately and shall be paid fully and in cash without any set off, counter-claim, deduction or stay of execution before delivery of the Goods.

22.4 The Merchant shall be liable for all expenses of fumigation, gathering and stacking, repairing damage to and usual wear and tear of Containers, and for all storage, demurrage and other charges and liabilities arising in connection with the Goods.

22.5 All Freight and charges shall be paid without any reduction or deferment on account of any claim, counterclaim or set-off whether relating to the Carrier's Freight or otherwise.

## 23. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto, which lien shall survive delivery, for all sums payable to the Carrier under this contract and for General Average contributions to whomsoever due. The Carrier shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due from the Merchant to the Carrier under any other contract whatsoever. The Carrier may exercise its lien at any time and at any place in its sole discretion, whether the contractual Carriage is completed or not. In any event any lien shall extend to cover the cost of recovering any sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant and at the Merchant's expense.

## 24. General Average and New Jason Clause

24.1 General Average to be adjusted at any port or place at the Carrier's option, and to be settled according to the York-Antwerp Rules, 1994, covering all goods, whether carried on or under deck. The New Jason Clause as approved by BIMCO is to be considered as incorporated herein and the Merchant shall provide such security as may be required by the Carrier in this connection.

24.2 Notwithstanding the foregoing, the Merchant shall defend, indemnify and hold harmless the Carrier against any claim (and any expense arising therefrom) of a General Average nature which may be made on the Carrier and shall provide such security as may be required by the Carrier in this connection.

## 25. Both-to-Blame Collision Clause

25.1 The Both-to-Blame Collision Clause as adopted by BIMCO is deemed incorporated herein.

## 26. General Average and Salvage

26.1 General Average to be adjusted at any port or place at the Carrier's option.



Maersk Agency U.S.A., Inc.
9300 Arrowpoint Boulevard
Charlotte NC 28273-8136

## DETENTION INVOICE Number:
**Original**
**5247353278**

| Bill-to Party : | C TRANSPORT SERVICES INC | Invoice Date: | 08-14-2013 |
| | 13390 SW 46TH CT | Due Date: | 08-14-2013 |
| | MIRAMAR FL 33027 | | |
| | | Payment terms: | Payable immediately |
| Attention of: | DET/DEM ACCOUNTS PAYABLE | | |
| On behalf of : | C TRANSPORT SERVICES INC | Our Contact: | Doretha Pettaway |
| | 13390 SW 46TH CT | Our Telephone: | 1-7045712362 |
| | MIRAMAR FL 33027 | | |

| Customer No: | US00949403 |

Maersk Agency U.S.A., Inc. as agent for carrier A.P. Moller Maersk A/S
Esplanaden 50, DK 1098 Copenhagen K, Denmark.
Trading under the name Maersk Line with below VAT number:
DK53139655 - applicable for exports to or imports from EU shipment (transactions not reported on EC Sales List)
DK12559410 - applicable for intra-EU or outside EU shipment (transactions reported on EC Sales List)

### Total Amount Due

| Condition | Rate | Base Value | Total(USD) |
|---|---|---|---|
| Net value | | | 24,252.00 |
| 0% Non EU services VAT | 0.00 % | 24,252.00 | 0.00 |
| **Amount Due** | | | **24,252.00** |

### Bill of Lading Number: 589997693

| Origin | Destination | Vessel | Voyage |
|---|---|---|---|
| | Place of Delivery: Miami | | |

| Description | Container | Type | Start | End | Qty | UoM | ROE | Total(USD) |
|---|---|---|---|---|---|---|---|---|
| Freetime | | | 08-30-2012 | 09-08-2012 | 10 | | | |
| Per Diem | TTNU9725526 | 40 DRY | 09-09-2012 | 08-02-2013 | 1 | CNT | 1.00000 | 24,252.00 |

Tier 1: 5 Days x $70.00 = $350.00
Tier 2: 323 Days x $74.00 = $23902.00
Loc: MIATM - Line: P3 - Contract: 605388
Billable Days: 328

| | | | | | Total Due: | | | 24,252.00 |

* Service Contract Number:
* Credit cards are now being accepted for demurrage and detention payments
Demurrage – Simply call the Maersk Release Team at 877-699-9444, option #1
Detention – Simply call the Maersk D&D Team at 877-699-9444, option #5
* Electronic payments:
* For proper application of your funds, include a copy of your Maersk invoice(s) or bill of lading number(s) with your payment.

Page 1 of   2



Maersk Agency U.S.A., Inc.
9300 Arrowpoint Boulevard
Charlotte NC 28273-8136

## DETENTION INVOICE Number:  5247353278

For electronic payments, please forward your remittance information via email to NAMFRCSVCACH@maersk.com.
* Bank: Bank of America
Account Information:
Wire Only- ABA: 026009593 Account: 4426928403
ACH Only- ABA: 111000012 Account: 4426928403
Type of Account: Customer Connections Account
* If paying by check, please remit payment to:
Maersk Agency U.S.A., Inc.
Attention: Payment Services - 3rd Floor South
9300 Arrowpoint Blvd
Charlotte, NC 28273-8136